FILED
SUPERIOR COURT
OF GUAM

2019 JAN 14 PM 2:22

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM, | CRIMINAL CASE NO.: CF0693-16 |
| vs. | |
| ROBERT JOHN MIRANDA,<br>*aka* Robert Juan Miranda<br>DOB: 03/16/1979 | DECISION AND ORDER<br>(Defendant's Motion to Suppress) |
| DEFENDANT. | |

**INTRODUCTION**

This matter came before the Honorable Anita A. Sukola on Robert John Miranda's ("Defendant") Motion to Suppress. Public Defender Stephen P. Hattori has appeared on behalf of the Defendant. Then-assistant Attorney General Andrew A. Warlaumont has appeared on behalf of the People of Guam ("People"). Upon review of the evidence and testimony offered during the Suppression Hearing, and the oral arguments and legal authorities presented by the Parties, the Court hereby **DENIES** the Defendant's Motion to Suppress.

**BACKGROUND**

The Court finds the following facts from the testimony during the Suppression Hearing on October 9, 2018. On or about November 26, 2016, Guam Police Department ("GPD") Officer Justin Cruz was monitoring traffic on Route 1 ("Marine Corps Drive") from his police vehicle

parked in the North West Plaza parking lot in Tamuning. At approximately 7:00 p.m., while outside his police vehicle, Officer Cruz looked across Marine Corps Drive and noticed a motorcycle traveling at a considerable speed on the sidewalk running parallel to the southbound lanes. The Defendant was the operator of the motorcycle. Officer Cruz described the speed of the motorcycle by stating that the bike was not being pushed, and instead the Defendant was riding the motorcycle. The officer further testified that he could not tell from the other side of Marine Corps Drive whether the motorcycle's engine was on or not.

Once the bike stopped, Officer Cruz crossed Marine Corps Drive when it was safe to do so. Officer Babauta, who was Officer Cruz's Superior and partner in their vehicle, drove the police vehicle from the northbound side of the road to the southbound side. This took time because there is an island in this area of Marine Corps Drive.

Once across the street, Officer Cruz asked the Defendant if everything was okay. The Defendant indicated that he was experiencing mechanical problems with the motorcycle. Officer Cruz then informed the Defendant that he was not supposed to be operating his motorcycle on the sidewalk and asked for his license and registration. The Defendant indicated that he did not have a motorcycle operator's license. Without identification, Officer Cruz relayed the Defendant's information to dispatch. GPD dispatch responded that the Defendant had two active warrants.

Officer Cruz then placed the Defendant under arrest for the two warrants. Officer Cruz read the Defendant his Miranda rights using a Miranda rights card. After informing the Defendant of his rights, Officer Babauta escorted the Defendant to the officers' police vehicle and searched the Defendant's person. During the search, Officer Babauta found a Ziploc baggie with a crystalline substance he suspected to be methamphetamine in the Defendant's pants' coin pocket. Officer Babauta subjected a sample of the substance to a field test kit which returned a reaction indicating the presence of methamphetamine. The Defendant was then taken to the police precinct.

The Defendant called the Clerk of Court as the Custodian of Records for the Superior Court of Guam. The Clerk of Court testified that the first warrant noted by the Officers in their police reports was in case number CF0365-12 and was for a Defendant named Tender Ruby, and

not the Defendant. The second warrant used by the officers as a basis to arrest and search the Defendant was for a Traffic Ticket with citation number 1C00698822 and the name on the citation was Robert V. Miranda.. The warrant was issued on October 2011. The Superior Court case file did not show that the warrant was ever returned. The Clerk of Court testified that the warrant was the last document in the case file and no record of payment appeared in the file. The Court looked up the case file while the Clerk of Court was on the witness stand. The Court stated in open court and on the record that the ticket was paid off on October 28, 2011. The Clerk of Court stated that typically when a citation is paid after a warrant is issued, the warrant would be vacated and the case would be closed. However, the Clerk of Court testified that the warrant for the Defendant in the traffic citation case was not vacated until November 28, 2016.

On December 13, 2016 a Superior Court of Guam Grand Jury returned an Indictment against the Defendant charging him with **POSSESSION OF A SCHEDULE II CONTROLLED SUBSTANCE (As a 3rd Degree Felony), DRIVING WHILE INTOXICATED (As a Misdemeanor), and OPERATING A MOTOR VEHICLE WITHOUT A VALID OPERATORS LICENSE (As a Violation).**

The Defendant filed the instant Motion to Suppress on September 7, 2018. The People filed an Opposition on September 21, 2018. The Court held a Suppression hearing on October 9, 2018. The Parties were given an opportunity to submit Proposed Findings of Fact and Conclusions of Law, and to make final arguments on November 9, 2018. At the conclusion of the Parties' final arguments, the Court took the matter under advisement.

<u>DISCUSSION</u>

In the Motion to Suppress, the Defendant argues that the two warrants used by the officers as the basis to arrest and thereby to search the Defendant, did not exist. Def's Mot. to Suppress 2-3 (Sept. 7, 2018). Thus, the Defendant argues the officers arrest and search of the Defendant were unconstitutional and therefore that the items found on his person should be suppressed. Id. In opposition, the People argue that the Defendant was lawfully detained, and further that the police relied in good faith on the warrant-related information relayed through dispatch when they placed

the Defendant under arrest and searched his person. People's Opp'n to Def's Mot. to Suppress 2-3 (Sept. 21, 2018).

The Parties' arguments raise two issues the Court must address. First, the Court must determine whether the seizure of the Defendant was constitutionally permissible. Second, the Court must determine whether the items found on the Defendant's need be suppressed based on the use of the two arrest warrants to arrest and search the Defendant.

### i. *Whether the police lawfully detained the Defendant.*

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. The Amendment's protections are extended to Guam via the Organic Act of Guam. See 48 U.S.C.A. § 1421b (West 2017). To be permissible, every search and seizure of a person, or their house, papers, and effects, must be reasonable to be constitutionally permissible. See People v. Chargualaf, 2001 Guam 1 ¶ 14.

A seizure that is not authorized by a duly issued warrant is presumed unreasonable. People v. Chargualaf, 2001 Guam 1 ¶ 14 (citing Pennsylvania v. Strickler, 757 A.2d 884, 888 (Pa. 2000)). When police pull a vehicle over, a seizure occurs for the purposes of the Fourth Amendment. Chargualaf, 2001 Guam 1 at ¶ 17. However, the Supreme Court has recognized several exceptions to the warrant requirement, including the seizure of a vehicle in certain circumstances.

Vehicle stops implicate the Fourth Amendment because "[a]s with other categories of Fourth Amendment constraints, the reasonableness of such seizures depends on the balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." U.S. v. Brignoni-Ponce, 422 U.S. 873, 878 (1975). Thus, the mere fact that an individual is driving a vehicle and is not in his home does not eliminate his interest in privacy or his right to be free from interference by law enforcement officers. See Delaware v. Prouse, 440 U.S. 648, 662-64 (1979) (reasoning "[a]utomobile travel is a basic, pervasive, and often necessary mode of transportation to and from one's home, workplace, and leisure activities. Many people spend more hours each day traveling in cars than walking on the streets . . . Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the

security guaranteed by the Fourth Amendment would be seriously circumscribed . . . people are not shorn of all Fourth Amendment protection when they step from their homes onto the public sidewalks. Nor are they shorn of those interests when they step from the sidewalks into their automobiles." (internal citations and quotations omitted)).

In Terry v. Ohio, 392 U.S. 1 (1968), the Supreme Court held that a law enforcement officer may detain a suspect where the officer observes unusual conduct which leads him to reasonably conclude in light of his experience that criminal activity may be afoot. See Terry, 392 U.S. at 31. The exception to the warrant requirement in Terry has been extended to allow police to pull a vehicle over without a warrant "where the police merely have reasonable suspicion to believe the driver has committed a traffic violation." See Chargualaf, 2001 Guam 1 at ¶ 17; see also, Brignoni-Ponce, 422 U.S. at 881. The Guam Legislature has codified the Terry decision in Guam law at 8 G.C.A. § 30.10 et seq. See People v. Taman, 2013 Guam 22 ¶ 21. The standard for reasonable suspicion is determined from the objective perspective of a reasonable officer with knowledge of the facts and events leading up to the stop. See People v. Mansapit, 2016 Guam 30 ¶ 9 (citing Ornelas v. U.S., 517 U.S. 690, 696 (1996)).

In Chargualaf, the Supreme Court found that a police officer's observation that a vehicle the defendant was operating had a cracked windshield gave the officer probable cause that a traffic violation had occurred and thus the seizure of the Defendant in that matter was constitutionally permissible. Chargualaf, 2001 Guam 1 at ¶ 18.

Under Guam law, upon all roadways, a motor vehicle shall be driven on the right half of the roadway and not on the sidewalk. 16 G.C.A. § 3309. Motor vehicles may not park or stand on a sidewalk, and may only cross the sidewalk giving the right of way to pedestrians. See 16 G.C.A. §§ 3328, 3402(i). A motorcycle falls within the definition of motor vehicle under the vehicle code. See 16 G.C.A. §§ 1101(q), (s).

Here, Officer Cruz testified that he saw the motorcycle operated by the Defendant travelling on the sidewalk. The Defendant himself admitted that he was going fast enough that he

CF0693-16 People vs. Miranda
DECISION AND ORDER (Defendant's Motion to Suppress)

Page 5 of 8

could not use his feet to stop or he would break his ankles. Thus, the Court finds that the officers had reasonable suspicion that the Defendant was violating Guam law. There was no indication that the Defendant was only crossing the sidewalk. Instead, the officers observed the Defendant operating the motorcycle on a sidewalk. The Defendant attempted to impeach the officers by pointing out that they never checked whether the motorcycle was running. However, from their viewpoint across the busy Marine Corps Drive, the Court finds their observation of the speed of the motorcycle on the sidewalk was sufficient. There is no requirement that the officers had to be sure the motorcycle was running. The state of the law only requires that they reasonably suspect a violation of law. Here, the speed of the motorcycle and the Defendant atop the motorcycle in the operator's position was sufficient to form such reasonable suspicion that the Defendant was operating the motorcycle in violation of any or all of the code sections cited above. Thus, the Court finds no constitutional infirmity in the seizure of the Defendant.

### ii. *Whether suppression is appropriate.*

The Defendant argues that suppression of the items seized during the search of the Defendant incident to arrest is appropriate because the warrants used as the basis for the predicate arrest and later search of the Defendant were invalid. Def's Mot. to Suppress 2-3 (Sept. 7, 2018).

The Court finds the Supreme Court of the United States case of, Arizona v. Evans, 514 U.S. 1 (1995), is the controlling law on the issue presented herein. In Evans, a police officer pulled the defendant over for driving the wrong way down a one way street. Id. at 4. The defendant's license was suspended, so the officer entered the defendant's name into a computer terminal in his patrol vehicle. Id. The computer search confirmed that the defendant's license was suspended and also indicated that there was an outstanding warrant for his arrest. Id. The officer then arrested the defendant based on the warrant. Id. When the local court was informed of the arrest by the police, the court discovered that the arrest warrant was previously quashed. Id. The Chief Clerk of the court testified to the process for quashing warrants and that an error occurred somewhere in the process which resulted in the quashing of the warrant not being recorded in the sheriff's office. Id.

The Supreme Court considered the issue of "whether the exclusionary rule requires suppression of evidence seized incident to an arrest resulting from an inaccurate computer record, regardless of whether police personnel or court personnel were responsible for the records continued presence in the police computer." Evans, 514 U.S. at 6. The Court created the categorical rule that where an error affecting the status of an electronic record is attributable to court employees, exclusion is not required. Id. at 14-16. The Court reasoned the exclusionary rule was historically designed as a means of deterring *police conduct*, not mistakes by Court employees. Id. The Court further reasoned that there was no basis to believe that "using the exclusionary rule in these circumstances would have a significant effect on court employees responsible for informing the police that a warrant has been quashed." Id. at 15. The Court emphasized that court clerks are not law enforcement and thus have no stake in the outcome of criminal prosecutions. Id. Thus, the "threat of exclusion of evidence could not be expected to deter individuals from failing to inform police officials that a warrant had been quashed." Id. The Court further reasoned that exclusion due to a court clerk's error would also not alter police behavior, which is a basic purpose of the exclusionary rule. Id. Finally, the Court emphasized that the arresting officer acted objectively reasonably in relying on the erroneous computer record while in the field. Id. at 15-16.

Evans and the case at bar could not be more similar. Here, as in Evans, the Clerk of Court testified that the warrant related to the traffic citation should have been vacated when a payment was made in 2011.[1] However, the warrant was not vacated in Superior Court of Guam case records until November of 2016. The application of the exclusionary rule here would not serve the deterrent rationale for curbing police conduct. As in Evans, the error was with the Superior Court and the police officers in the field acted reasonably when they received information that there was

---

[1] The Court recognizes there was testimony that more than one warrant was outstanding for the Defendant. However, because the Court finds one of the warrants was active, albeit erroneously so, the Court finds the issues related to the second warrant being used as a basis to arrest and search the Defendant to be moot.

an active warrant for the Defendant's arrest. Based on <u>Evans</u>, the Court must find that suppression is not appropriate.[2]

## CONCLUSION

Thus, by preponderance of the evidence and based on the foregoing reasons, the Court **DENIES** the Defendant's Motion to Suppress.

A **Criminal Trial Setting** is set for _____1/22/19_____ at **10:00 a.m.**

SO ORDERED _____1/14/19_____.

_____
The Honorable Anita A. Sukola
Judge, Superior Court of Guam

SERVICE VIA COURT BOX
I acknowledge that the
original he... ...ed in the
court box o...

_____

Date: 1/14/19 Time: 2:30

**Rosalind C. Balajadia**
Deputy Clerk, Superior Court of Guam

---

[2] Here, because the Officers reasonably believed a warrant to arrest the Defendant existed. Their arrest and search incident to arrest were well within the bounds allowed where officers make a search of a person incident to their arrest in a public place. <u>See generally</u>, <u>Arizona v. Gant</u>, 556 U.S. 332, 338-339 (2009) (describing the history and scope of the search incident to lawful arrest exception to the Fourth Amendment warrant requirement).

CF0693-16 People vs. Miranda                                          Page 8 of 8
DECISION AND ORDER (Defendant's Motion to Suppress)